Slip Op. 18-124

# UNITED STATES COURT OF INTERNATIONAL TRADE

HOR LIANG INDUSTRIAL CORP.   AND
ROMP COIL NAILS INDUSTRIES INC.,

       Plaintiffs,

       v.

UNITED STATES,

       Defendant,

   and

MID CONTINENT STEEL & WIRE, INC.,

       Defendant-Intervenor.

Before: Mark A. Barnett, Judge

Court No. 18-00029

## OPINION AND ORDER

[Defendant's motion to dismiss for lack of subject matter jurisdiction is denied. Plaintiff's complaint is dismissed, in part, for failure to state a claim upon which relief can be granted. Proposed Plaintiff-Intervenor's motion to intervene is granted.]

Dated:  September 24, 2018

Ned H. Marshak, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY, argued for Plaintiff.  With him on the brief were Max F. Schutzman, and Andrew T. Schutz.

Sosun Bae, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant.  With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.  Of counsel on the brief was Natan P. L. Tubman, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

Adam H. Gordon, The Bristol Group PLLC, of Washington, DC, argued for Defendant-Intervenor.  With him on the brief were Ping Gong and Lydia K. Childre.

Barnett, Judge:  Hor Liang Industrial Corp. ("Hor Liang") and Romp Coil Nails Industries Inc. ("Romp") (together, "Plaintiffs") seek to challenge the U.S. Department of Commerce's ("Commerce" or the "agency") final results in the first administrative review of the antidumping duty order covering certain steel nails from Taiwan.  *See* Am. Compl., ECF No. 20; *Certain Steel Nails from Taiwan*, 83 Fed. Reg. 6,163 (Dep't Commerce Feb. 13, 2018) (final results of antidumping admin. review and partial rescission of admin. review; 2015-2016) ("*Final Results*").  Defendant United States ("Defendant" or the "Government") moves to dismiss Plaintiffs' amended complaint for lack of subject matter jurisdiction pursuant to United States Court of International Trade ("USCIT") Rule 12(b)(1).  Def.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction and to Dissolve Corresponding Statutory Inj. ("Def.'s Mot."), ECF No. 26.  Plaintiffs oppose the motion.  Resp. to Def.'s Mot. to Dismiss Pls.' Compl. for Lack of Subject Matter Jurisdiction ("Pls.' Opp'n"), ECF No. 35.  Defendant-Intervenor Mid Continent Steel & Wire, Inc. ("Mid Continent") supports the motion.  Def.-Int.'s Resp. in Supp. of Def.'s Mot. to Dismiss and to Dissolve Statutory Inj. ("Def.-Int.'s Resp."), ECF No. 28.

The questions before the court are whether (1) Plaintiffs were parties to the administrative proceeding with standing to challenge the *Final Results* pursuant to 28 U.S.C. § 1581(c) even though their sole submission consisted of ministerial error comments, which were rejected by Commerce and removed from the administrative record; (2) the court otherwise has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i) to resolve Plaintiffs' challenges; and (3) if the court possesses subject matter

jurisdiction, the doctrine of administrative exhaustion nevertheless precludes Plaintiffs from presenting their arguments to the court.

For the reasons discussed herein, the court finds that Plaintiffs have standing to invoke the court's jurisdiction pursuant to 28 U.S.C. § 1581(c); thus, jurisdiction pursuant to 28 U.S.C. § 1581(i), which was alleged in the alternative, is unavailable. Accordingly, Defendant's motion is denied.  The court dismisses certain of Plaintiffs' claims, however, for failure to exhaust administrative remedies.

## BACKGROUND

In September 2016, Commerce initiated the first administrative review of the antidumping duty order covering certain steel nails from Taiwan.  *Initiation of Antidumping and Countervailing Duty Admin. Reviews*, 81 Fed. Reg. 62,720 (Dep't Commerce Sept. 12, 2016).  Plaintiffs, Taiwanese producers and exporters of steel nails, were subject to the review but were not selected for individual examination.  *Id.*, 81 Fed. Reg. at 62,726; Am. Compl. ¶¶ 3, 11.  Three companies, PT Enterprise, Inc. ("PT Enterprise"), Bonuts Hardware Logistics Co., LLC ("Bonuts"), and Unicatch Industrial Co., Ltd. ("Unicatch") were individually examined.  *See* Am. Compl. ¶ 14.

In June 2017, Mid Continent first urged Commerce to assign to Unicatch and PT Enterprise dumping margins based on the facts available with an adverse inference (referred to as "adverse facts available" or "AFA").[1]  Def.-Int.'s Resp. at 3.  Mid Continent also met with Commerce officials to discuss the matter.  *See id.*

---

[1] When "necessary information is not available on the record," or an interested party "withholds information" requested by Commerce, "fails to provide" requested information

On August 7, 2017, Commerce published its preliminary results.  *Certain Steel Nails from Taiwan*, 82 Fed. Reg. 36,744 (Dep't Commerce Aug. 7, 2017) (prelim. results of antidumping duty admin. review and partial rescission of admin. review; 2015-2016) ("*Prelim. Results*").  Therein, Commerce determined that PT Enterprise and Bonuts had failed to cooperate to the best of their ability and assigned them weighted-average dumping margins equal to 78.17 percent based on adverse facts available.  *Id.*, 82 Fed. Reg. at 36,744-45.  Commerce preliminarily calculated a weighted-average dumping margin of 34.20 percent for Unicatch, based on the data it had submitted.  *Id.*; *see also* Am. Compl. ¶ 12.

To calculate dumping margins for non-examined companies—such as Romp and Hor Liang—Commerce is guided by 19 U.S.C. § 1673d(c)(5).[2]  *See Prelim. Results*, 82 Fed. Reg. at 36,744.  Section 1673d(c)(5)(A) provides that the "all-others rate" assigned to non-examined companies is calculated as "the weighted average of the estimated weighted average dumping margins" assigned to individually-examined companies, "excluding any zero and de minimis margins, and any margins determined entirely

---

by the submission deadlines, "significantly impedes a proceeding," or provides information that cannot be verified, Commerce fills the evidentiary gap with "the facts otherwise available."  19 U.S.C. § 1677e(a).   Additionally, if Commerce determines that the party "has failed to cooperate by not acting to the best of its ability to comply with a request for information," it "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." *Id.* § 1677e(b).

[2] By its terms, 19 U.S.C. § 1673d applies to market economy investigations, not administrative reviews.  As a general rule, however, Commerce looks to § 1673d(c)(5) for guidance when calculating the rate for non-examined companies in administrative reviews.  *See* Issues and Decision Mem. for Certain Steel Nails from Taiwan, A-583-854 (Feb. 6, 2018) ("I&D Mem.") at 5, *available at* https://enforcement.trade.gov/frn/ summary/taiwan/2018-02897-1.pdf (last visited Sept. 18, 2018).

under section 1677e of this title [i.e., on the basis of adverse facts available]."  19

U.S.C. § 1673d(c)(5)(A).  If, however, the dumping margins assigned to all individually-

examined companies are zero, de minimis, or based on adverse facts available,

Commerce "may use any reasonable method to establish the estimated all-others rate

for exporters and producers not individually investigated, including averaging the

estimated weighted average dumping margins determined for the exporters and

producers individually investigated."  *Id.* § 1673d(c)(5)(B).  Citing to 19 U.S.C.

§ 1673d(c)(5)(A), Commerce preliminarily assigned Unicatch's rate to Romp and Hor

Liang.  *Prelim. Results*, 82 Fed. Reg. at 36,744.

Plaintiffs did not file case or rebuttal briefs in response to the preliminary results.

Def.'s Mot. at 2.  Mid Continent filed a case brief again urging Commerce to reject

Unicatch's data and, instead, assign to Unicatch a rate based on adverse facts

available.  Def.-Int.'s Resp. at 4.

On February 6, 2018, Commerce issued the *Final Results*.  *See Final Results*, 83

Fed. Reg. at 6,165.[3]  Therein, Commerce determined to use adverse facts available to

determine the rate for Unicatch as well as for the other individually-examined

respondents—PT Enterprise and Bonuts —resulting in all individually examined

respondents receiving final dumping margins of 78.17 percent.  *Final Results*, 83 Fed.

Reg. at 6,164; Am. Compl. ¶ 14.  Commerce assigned Romp and Hor Liang weighted-

average dumping margins of 78.17 percent; i.e., "the rate determined for all mandatory

---

[3] Commerce published the *Final Results* on February 13, 2018.  *See Final Results*, 83
Fed. Reg. at 6,163.

respondents." *Final Results*, 83 Fed. Reg. at 6,164 (citing 19 U.S.C. § 1673d(c)(5)(B));

Am. Compl. ¶¶ 14-15.[4]

Soon thereafter, Romp and Hor Liang filed notices of appearance and requests

for an administrative protective order.  *See* Am. Compl. ¶ 4.  On February 20, 2018,

Romp and Hor Liang filed ministerial error comments.  *Id*. ¶ 19; *see also* Pls.' Opp'n,

Attach. 1 ("Pls.' Ministerial Error Allegation"), ECF No. 35.  Therein, Romp and Hor

Liang argued that Commerce assigned them a rate based on adverse facts available

without considering readily available evidence regarding alternative rates, and this

failure constituted a clerical error that Commerce could correct pursuant to 19 U.S.C.

§ 1675(h)[5] and 19 C.F.R. § 351.224.[6]  Pls.' Ministerial Error Allegation at 3-7; Am.

Compl. ¶ 19.

---

[4] Commerce explained its determination by way of reference to the U.S. Court of
Appeals for the Federal Circuit's ("Federal Circuit") decision in *Albemarle Corp. v.
United States*, 821 F.3d 1345 (Fed. Cir. 2016), and the Statement of Administrative
Action ("SAA") accompanying the Uruguay Round Agreements Act.  *See* I&D Mem. at 5
& nn.13-14 (citations omitted).

[5] Pursuant to § 1675(h),

> [Commerce] shall establish procedures for the correction of ministerial
> errors in final determinations within a reasonable time after the
> determinations are issued under this section. Such procedures shall
> ensure opportunity for interested parties to present their views regarding
> any such errors. As used in this subsection, the term "ministerial error"
> includes errors in addition, subtraction, or other arithmetic function, clerical
> errors resulting from inaccurate copying, duplication, or the like, and any
> other type of unintentional error which the administering authority
> considers ministerial.

19 U.S.C. § 1675(h).

[6] Commerce's regulations provide certain procedures for the correction of ministerial
errors.  *See* 19 C.F.R. § 351.224.  Relevant here, "[a] party to the proceeding to whom
the Secretary has disclosed calculations performed in connection with a final
determination or the final results of a review may submit comments concerning any

On February 27, 2018, Commerce rejected (or otherwise denied) Romp and Hor

Liang's ministerial error allegation.  Rejection of Submission (Feb. 27, 2018)

("Commerce Feb. 27 Letter"), ECF No. 43-1; Am. Compl. ¶ 24.  Commerce explained

that it had not made a ministerial error as that term is defined by statute and regulation,

and, "[b]ased upon [its] analysis of the comments received, [] will not amend [Romp's

and Hor Liang's] margins."  Commerce Feb. 27 Letter at 1; Am. Compl. ¶ 24.  The

following day, Commerce removed the ministerial error allegation from the record.

Rejection of Submissions: Romp and Hor Liang (Feb. 28, 2018) ("Commerce Feb. 28

Letter), ECF No. 43-3; Am. Compl. ¶¶ 25-26.

On March 2, 2018, Romp and Hor Liang requested Commerce to reinstate their

ministerial error allegation on the administrative record.  Pls.' Opp'n, Attach. 3, ECF No.

35.  On March 15, 2018, Commerce denied the request.  Rejection of Submission

(March 15, 2018) ("Commerce March 15 Letter"), ECF No. 43-5.  Commerce explained

that it had "denied" and "rejected" Romp and Hor Liang's ministerial error allegation

because they "[had] not raise[d] a good faith ministerial error argument, but instead

raised arguments clearly pertaining to the substantive nature of Commerce's

methodological decision to determine the rate for the separate rate companies."  *Id.* at

1-2.  Thus, Commerce reasoned, it had properly rejected the submission and removed it

from the record.  *Id.* at 2.

---

ministerial error in such calculations."  *Id.* § 351.224(c)(1).  A "ministerial error means an
error in addition, subtraction, or other arithmetic function, clerical error resulting from
inaccurate copying, duplication, or the like, and any other similar type of unintentional
error which the Secretary considers ministerial."  *Id.* § 351.244(f).

On February 22, 2018, Romp and Hor Liang initiated this action challenging the *Final Results*.  Summons, ECF No. 1.  Plaintiffs alleged jurisdiction pursuant to 28 U.S.C. § 1581(c) and (i) (hereinafter referred to as "(c) jurisdiction" and "(i) jurisdiction," respectively).  Am. Compl. ¶ 2.  Plaintiffs alleged that they were interested parties who were parties to the proceeding on the basis of their timely filed ministerial error allegation.  *Id.* ¶¶ 3-4.

On March 26, 2018, S.T.O. Industries, Inc. ("STO Industries") moved to intervene in this action as a plaintiff-intervenor.  *See* Proposed Pl.-Int.'s Second Am. Mot. to Intervene as a Matter of Right ("Mot. to Intervene"), ECF No. 25.  The Government and Mid Continent each oppose STO Industries' motion on the basis that the company lacks standing.  *See* Def.'s Resp. Opp'n to Second Am. Mot. to Intervene ("Def.'s Opp'n to Mot. to Intervene"), ECF No. 27; Def.-Int.'s Resp. in Opp'n to Proposed Pl.-Int.'s Second Am. Mot. to Intervene as a Matter of Right ("Def.-Int.'s Opp'n to Mot. to Intervene"), ECF No. 29.   STO Industries is a U.S. importer of the subject merchandise.  Mot. to Intervene at 3.  STO Industries' participation in the underlying proceeding also consisted of entering an appearance and filing ministerial error comments on the *Final Results*. *See id.*  Commerce rejected the submission and removed it from the record.  Rejection of Submission: STO Industries, et al. (Feb. 27, 2018), ECF No. 43-2; Rejection of Submissions: STO Industries, et al (Feb. 28, 2018), ECF No. 43-4.  Also on March 26, 2018, the Government moved to dismiss this action for lack of subject matter jurisdiction.  *See* Def.'s Mot.

On July 2, 2018, the court, *sua sponte*, ordered additional briefing concerning Plaintiffs' exhaustion of administrative remedies and the propriety of dismissal pursuant to USCIT Rule 12(b)(6).  Order (July 2, 2018), ECF No. 44.  The Government initially argued that the court should not dismiss the action for failure to exhaust administrative remedies, Def.'s Suppl. Br. in Resp. to Court's Order ("Def.'s Exh. Br."), ECF No. 45, but changed its position at oral argument and stated that it would not object to dismissal, Oral Arg Tr. at 77:20-21, ECF No. 52.[7]  Mid Continent argues that the court should dismiss the action.  Def.-Int.'s Add'l Br. in Resp. to the Court's July 2, 2018 Order ("Def.-Int.'s Exh. Br."), ECF No. 46.  Plaintiffs and STO Industries argue against dismissal. Pls.' Resp. to Def.'s and Def.-Int.'s Suppl. Br. in Resp. to the Court's July 2, 2018 Order ("Pls.' Exh. Br."), ECF No. 48; Proposed Pl.-Int.'s Resp. to the Court's Order Dated July 2, 2018 ("Pl.-Int.'s Exh. Br."), ECF No. 47.

## DISCUSSION

## I.   Subject Matter Jurisdiction

### A.   Legal Standard

To adjudicate a case, a court must have subject-matter jurisdiction over the claims presented.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

---

[7] The court heard oral argument on July 24, 2018.  Docket Entry, ECF No. 50.

A plaintiff bears the burden of establishing subject-matter jurisdiction.  *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  When, as here, the "motion challenges a complaint's allegations of jurisdiction, the factual allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true."  *Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).[8]  To "resolv[e] these disputed predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings."  *Id.* (internal quotation marks and citation omitted).

In this case, the Government challenges the existence of jurisdiction.  *See* Def.'s Mot.  Therefore, the court may consider extrinsic evidence.  *Shoshone Indian Tribe*, 672 F.3d at 1030.

## B.      The Court has Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1581(c)

There are two requirements for a plaintiff (or plaintiff-intervenor) seeking to invoke the court's jurisdiction pursuant to 28 U.S.C. § 1581(c):[9] the plaintiff must (1) be an "interested party" and (2) have been a "party to the proceeding in connection with which the matter arose."  28 U.S.C. § 2631(c); *see also* 19 U.S.C. § 1516a(a)(2)(A)(ii). With regard to the first criterion, the Government does not challenge Plaintiffs' status as

---

[8] In contrast, when the motion challenges the sufficiency of the pleadings, the court assumes that the allegations within the complaint are true.  *H & H Wholesale Servs., Inc. v. United States*, 30 CIT 689, 691, 437 F. Supp. 2d 1335, 1339 (2006).

[9] Section 1581(c) affords the USCIT "exclusive jurisdiction of any civil action commenced under section 516A or 517 of the Tariff Act of 1930."  28 U.S.C. § 1581(c).

interested parties.  *See* Def.'s Mot. at 5; 19 U.S.C. § 1677(9)(A) (defining the term

"interested party" to include, *inter alia*, "a foreign manufacturer, producer, or exporter, or

the United States importer, of subject merchandise").  Congress did not statutorily

define "party to the proceeding."[10]  It is this jurisdictional predicate that is at issue in this

case.

### i.    The Party to the Proceeding Requirement

The court has interpreted the "party to the proceeding" requirement as a form of

participation that "reasonably convey[s] the separate status of a party, . . . and

provide[s] Commerce with notice of a party's concerns."  *Specialty Merch. Corp. v.*

*United States*, 31 CIT 364, 365, 477 F. Supp. 2d 1359, 1361 (2007) (internal quotation

marks and citations omitted).  The requirement is not onerous, and is "intended only to

bar action by someone who did not take the opportunity to further its interests on the

administrative level."  *Am. Grape Growers v. United States*, 9 CIT 103, 105-06, 604 F.

Supp. 1245, 1249 (1985).  Commerce's regulations more specifically define "party to the

proceeding" for the agency's purposes as "any interested party that actively participates,

through written submissions of factual information or written argument, in a segment of

a proceeding."  19 C.F.R. § 351.102(36).

Parties' briefing in this regard generally adopts or does not expressly challenge

reliance on Commerce's definition for standing purposes.  *See* Def.'s Mot. at 6; Pls.'

---

[10] Legislative history accompanying the Trade Agreements Act of 1979 defines "party to
the proceeding" as "any person who participated in the administrative proceeding."  S.
Rep. 96-249 at 247 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 633.

Opp'n at 14-15; Def.-Int.'s Resp. at 6-7.  At oral argument, the court invited Parties to

comment on the degree to which the court should be guided by Commerce's regulatory

definition when interpreting the same term for standing purposes.  Letter to Counsel

(July 18, 2018) ("Court's Letter") at 1, ECF No. 49.  The court noted that *Chevron*

deference does not apply to Commerce's regulatory definition because Commerce does

not administer the standing statute, 28 U.S.C. § 2631.  *Id.*; *see also Chevron, U.S.A.,*

*Inc. v. Nat'l Resources Def. Council, Inc.,* 467 U.S. 837, 842–43 (1984).  Parties

generally agreed that the court should defer to Commerce's definition.  Oral Arg. Tr. at

7:1-16; 27:5-13, 41:7-16.[11]

---

[11] In particular, the Government pointed the court to *JCM, Ltd. v. United States*, 210 F.3d 1357, 1360 (Fed. Cir. 2000), where, it contends, the Federal Circuit accepted Commerce's definition for standing purposes. Oral Arg. Tr. at 7:15-8:5. The court is not persuaded that *JCM* stands for the proposition that the Federal Circuit has accepted Commerce's definition as stating the requirements to obtain standing to invoke the court's (c) jurisdiction. There, the Federal Circuit confronted the issue of whether the USCIT had (i) jurisdiction, and held that it did not. *JCM*, 210 F.3d at 1359-60. The plaintiff had argued that because it was not selected as a mandatory respondent, Commerce had "foreclosed its opportunity to participate" and, thus, its ability to invoke (c) jurisdiction. *Id.* at 1360. In rejecting that argument, the Federal Circuit noted that Commerce's statutory ability to limit the number of mandatory respondents does not "preclude an interested party, not chosen as a respondent, from participating through written submissions to the [agency]," and, thereby, becoming a party to the proceeding as Commerce has defined the term. *Id.* The Federal Circuit did not expressly apply (or otherwise examine the merits of applying) Commerce's regulatory definition to determine standing to invoke (c) jurisdiction.

The Government also pointed to *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121 (1997), as supporting the proposition that Commerce's definition should be afforded deference pursuant to *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944). Oral Arg. Tr. at 9:6-8. Those cases, however, concern the deference due to an informal interpretation of a statute a particular entity administers. *Stevedore*, 521 U.S. at 123,136 (interpretation rendered by a Director to whom the Secretary had delegated administration of the Longshore and Harbor Workers' Compensation Act); *Skidmore*,

Commerce promulgated the regulation to heighten the requirements for obtaining

administrative standing from the former standard that merely required the entry of a

notice of appearance.  *Antidumping Duties*, 54 Fed. Reg. 12,742, 12,744 (Dep't

Commerce March 28, 1989) (final rule).  In so doing, the agency appeared to recognize

that the court's standing analysis is not constrained by the terms of 19 C.F.R.

§ 351.102(36).  *Id.* (noting that although the court may "benefit from the agency's

expertise as to the minimum participation in the administrative process that will make

possible the party's exhaustion of its administrative remedies," the court "may disagree

in the circumstances of a particular case that adherence to the regulatory requirements

was consistent with Congressional intent" regarding standing).

For purposes of resolving the pending motion to dismiss, the court need not

decide whether to be guided by Commerce's regulation to determine Plaintiffs' judicial

standing.  Commerce's regulation is consistent with the view that judicial standing

requires interested parties to have conveyed their separate status and notified

Commerce of their concerns.  *See, e.g.*, *Specialty Merch.*, 31 CIT at 365, 477 F. Supp.

---

323 U.S. at 130, 137 (interpretation rendered by the Administrator of the Fair Labor
Standards Act).  As noted above, Commerce does not administer the standing statute.
Mid Continent pointed the court to *United States v. Williams*, 514 U.S. 527, 531
(1995), which states the general principle that ambiguities in a statutory waiver of
sovereign immunity must be construed in favor of immunity.  Oral Arg. Tr. at 41:16-19.
In *Williams*, the U.S. Supreme Court addressed the extent to which 28 U.S.C. § 1346(a)
places limits on who may invoke the district courts' jurisdiction to hear civil actions
against the United States for the recovery of wrongfully assessed or collected taxes and
penalties.  514 U.S. at 531-32.  Here, however, Congress has stated who may invoke
the court's (c) jurisdiction: interested parties that were parties to the underlying
proceeding.  *See* 28 U.S.C. § 2631(c).  Accordingly, in this case, the court must decide
whether Plaintiffs are among those for whom immunity has been waived.

2d at 1361.  Resolving the pending motion requires more than the identification of a

"written submission" of facts or legal argument in the underlying proceeding.  Parties do

not dispute that Plaintiffs submitted (or attempted to submit) written argument in the

form of ministerial error comments documenting their concerns about the final all-others

rate.  Instead, the court must assess what impact—if any—Commerce's removal of the

submission from the administrative record has on Plaintiffs' ability to seek judicial

review.

### ii.    Plaintiffs were "Parties to the Proceeding" for Standing Purposes

The Government contends that Plaintiffs lack standing because their "sole written

submission was an improper use of the ministerial error process to raise substantive

legal arguments."  Def.'s Mot. at 6-7; *see also* Def.'s Reply Br. in Supp. of Mot. to

Dismiss ("Def.'s Reply") at 5-7, ECF No. 39.  The Government further contends that

Commerce properly removed Plaintiffs' ministerial error allegation from the record

pursuant to 19 C.F.R. § 351.104(a)(2)(iii)[12] because it "constituted an untimely and

unsolicited submission pursuant to 19 C.F.R. § 351.302(d)."[13]  Def.'s Mot. at 7; *see also*

Def.'s Reply at 7.  Mid Continent agrees with the Government.  Def.-Int.'s Resp. at 7.

Plaintiffs contend that Commerce abused its discretion in relying on a "good faith"

standard untethered to any authority to remove the ministerial error comments from the

---

[12] Section 351.104(a)(2)(iii) provides that the official record will not include information
Commerce rejects as untimely filed.  19 C.F.R. § 351.104(a)(2)(iii).

[13] Pursuant to § 351.302(d), Commerce "will not consider or retain in the official record
of the proceeding . . . [u]ntimely filed factual information, written argument, or other
material that the [agency] rejects."  *Id.* § 351.302(d)(1)(i).

record.  Pls.' Opp'n at 21-23.  In any event, Plaintiffs contend, their submission

constituted a good faith ministerial error allegation.  *Id.* at 23-36.

      The court disagrees with the Government's contention that resolving the standing

issue turns on whether Plaintiffs properly relied on the ministerial error period to raise

substantive matters.  At a minimum, Plaintiffs' submission notified Commerce of their

concerns about the agency's calculation of the all-others rate and sought to advance

their interests on the administrative level.  *See* Pls.' Ministerial Error Allegation.

Plaintiffs presented their alleged ministerial errors within the context of agency rulings

and case law discussing the nature of correctible clerical errors.  *Id.* at 4-7.  Plaintiffs

noted that Commerce "has taken the position that its failure to consider available

information constitutes a correctible clerical error," and argued that Commerce "failed to

consider available evidence" when calculating the all-others rate.  *Id.* at 6-7 & n.5

(collecting agency rulings).  Plaintiffs argued that Commerce's failure to consider

available evidence in the underlying proceeding and the resulting "restrict[ion] on [the

agency's] ability to calculate fair and accurate dumping margins" could be remedied

through the ministerial error process.  *Id.* at 6-7 & n.6 (citing *Shandong Huarong Gen.*

*Corp. v. United States,* 25 CIT 834, 159 F. Supp. 2d 714 (2001)).  Plaintiffs explicitly

avoided directly challenging Commerce's rationale for its all-others rate determination

and assumed, for purposes of the ministerial error allegation, that Commerce correctly

determined that it lacked the authority to assign Romp and Hor Liang a rate derived

from the original investigation.  *Id.* at 3-4.

The court also disagrees with the position asserted by the Government at oral argument that the court's standing analysis should be constrained by Commerce's discretionary management of the administrative record.  Oral Arg. Tr. at 10:7-15 (referring to U.S. Supreme Court and Federal Circuit precedent regarding the court's deference to agencies' management of the administrative record).  In *PSC VSMPO-Avisma Corp. v. United States*, the Federal Circuit indeed stated that, "[a]bsent constitutional constraints or extremely compelling circumstances . . . courts will defer to the judgment of an agency regarding the development of the agency record."  688 F.3d 751, 760 (Fed. Cir. 2012) (citations omitted).  *Avisma*, however, speaks to Commerce's management of the administrative record for its purposes; it does not address the interplay between the development of the agency record and judicial standing.  *See id.*

An examination of the regulations cited by the Government reveals the limitations of its argument.  *See* Def.'s Mot. at 7 (citing 19 C.F.R. §§ 351.104(a)(2)(iii) and 351.302(d)).  Section 351.302(d) permits Commerce to reject and remove from the record untimely written argument.  19 C.F.R. § 351.302(d)(1)(i).  The regulation does not, however, appear to contemplate Commerce's rejection of a *timely filed* ministerial error submission on the basis of its view that the submission contains untimely substantive legal argument.  Rather, § 351.302(d)(1) contemplates the rejection of a document for which the proponent failed to secure an extension of time.  *See id.* § 351.302(d)(1) (barring the retention of an untimely submission *unless* the agency has extended a time limit pursuant to section (b)); *id.* § 351.302(b) ("Unless expressly

precluded by statute, the [agency] may, for good cause, extend any time limit

established by this part.").

Section 351.104(a)(2)(iii) "defines what constitutes the official and public records

of an antidumping . . . duty proceeding."  *Antidumping Duties; Countervailing Duties*, 61

Fed. Reg. 7,308, 7,312 (Dep't Commerce Feb. 27, 1996) (proposed rule).  It states that

"the official record" will not "include any document that [Commerce] rejects as *untimely*

*filed*."  19 C.F.R. § 351.104(a)(2)(iii) (emphasis added).  Likewise, the Preamble to

§ 351.104 refers to "submission[s] *rejected as untimely*."  *Antidumping Duties;*

*Countervailing Duties*, 61 Fed. Reg. at 7312 (emphasis added).  Accordingly,

Commerce's regulations address the agency's ability to reject documents that parties

file after a given deadline; for example, a ministerial error allegation filed outside the

time permitted pursuant to 19 C.F.R. § 351.224(c)(2).[14]

Here, Commerce did not reject the ministerial error allegation on the basis of the

*submission's* untimeliness.  Rather, Commerce rejected (or denied)[15] the ministerial

error allegation based upon its analysis of the timeliness of its *content*.  *See* Commerce

Feb. 27 Letter at 1; Commerce March 15 Letter at 1-2 (explaining that Romp and Hor

Liang's filing of "substantive legal arguments under the guise of a request to correct a

---

[14] Section 351.224(c)(2) provides that ministerial error comments must be filed "within
five days after the earlier of: (i) The date on which the [agency] released disclosure
documents to that party; or (ii) The date on which the [agency] held a disclosure
meeting with that party."  19 C.F.R. § 351.224(c)(2).

[15] *Compare* Commerce Feb. 27 Letter (titled "Rejection of Submission"), *with*
Commerce March 15 Letter (referring both to the agency's denial and rejection of the
ministerial error allegation).

'ministerial error' does not make those arguments ministerial in nature, nor does it

confer timeliness to those arguments").  The substance of Commerce's explanation

reflects compliance with its regulatory obligation to "analyze any [ministerial error]

comments received."  19 C.F.R. § 351.224(e); *see also* Commerce Feb. 27 Letter

(referring to the agency's "analysis of the comments received"); Commerce March 15

Letter (providing further detail regarding the agency's analysis).  The conclusion

Commerce reaches from that analysis is, however, "subject to judicial review."  *Alloy*

*Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd.*, 334 F.3d 1284, 1291-92 (Fed. Cir. 2003)

(citations omitted).  As a general rule, therefore, "the 'comments received' by

Commerce regarding alleged ministerial errors must be part of the administrative record

for review."  *Id.* at 1292 (rejecting the Government's argument that the administrative

record is limited to pre-final determination filings).

      The Government also points to Commerce's discretion to decide "what

constitutes a ministerial error," Def.'s Reply at 7 (citing *Fabrique de Fer de Charleroi, SA*

*v. United States*, 25 CIT 567, 581, 166 F. Supp. 2d 593, 607 (2001); *Peer Bearing Co.*

*v. United States*, 23 CIT 454, 458, 57 F. Supp. 2d 1200, 1205 (1999)), and asserts that

because Plaintiffs' "submission [did] not fit the definition of a 'ministerial error,'

Commerce properly declined to consider it and acted within its discretion in rejecting

and removing it from the administrative record," *id.*  Although the cited opinions support

Commerce's discretion to determine when alleged errors are within the realm of

inadvertent errors contemplated by the ministerial error regulation, *see Fabrique de Fer*

*de Charleroi*, 25 CIT at 581, 166 F. Supp. 2d at 607; *Peer Bearing*, 23 CIT at 458, 57 F.

Supp. 2d at 1205, as those cases demonstrate, Commerce's determinations thereto are

subject to judicial review.  The Government has not offered persuasive authority for the

proposition that Commerce may rely upon its characterization of the arguments raised

in a ministerial error allegation to remove the submission from the administrative

record.[16]  As Plaintiffs point out, Commerce routinely denies ministerial error allegations

that raise methodological issues without removing the relevant submissions from the

record.  *See* Pls.' Opp'n at 21-22; Pls.' Attach. 4, ECF No. 35 (*Passenger Vehicle and*

*Light Truck Tires from the People's Republic of China*, Analysis of Ministerial Error

Allegation, A-570-016 (Apr. 16, 2018)); *cf., e.g.*, *ATC Tires Private Ltd. v. United States*,

Slip Op. 18-88, 2018 WL 3585219, at *2 (CIT July 16, 2018) (citing to ministerial error

submissions on the administrative record that Commerce denied because they raised

methodological issues); *CS Wind Vietnam Co., Ltd. v. United States*, 38 CIT ___, ___,

971 F. Supp. 2d 1271, 1276 (2014) (same).[17]

---

[16] The Government asserts that "even if [it] does not always remove an improper ministerial error submission from the record, this does not mean that Commerce does not have the discretion to do so."  Def.'s Reply at 5 (citing *Kerr-McGee Chem. Corp. v. United States*, 21 CIT 11, 23, 955 F. Supp. 1466, 1475 (1997)).  *Kerr-McGee* has minimal persuasive value because it addressed the removal of new factual information from the administrative record pursuant to a regulation that has since been superseded. *See Kerr-McGee*, 21 CIT at 23, 955 F. Supp. at 1475 (quoting 19 C.F.R. § 353.31(a)(3) (1994)); 19 C.F.R. Pt. 351, Annex V (noting that § 353.31(a)(3) has been superseded by § 351.104(a)(2)).

[17] At oral argument, the Government posited that Commerce's decision to remove ministerial error submissions from the record may turn on whether the proponent was already a party to the administrative proceeding when filing the submission.  Oral Arg. Tr. at 12:19-13:9. Commerce did not, however, reject or remove Plaintiffs' submission on that basis.  *See* Commerce Feb. 27 Letter; Commerce Feb. 28 Letter; Commerce March 15 Letter.  To the extent the Government seeks to rely on Commerce's ministerial error regulation, which potentially limits the filing of ministerial error

One final issue bears mentioning.  There is a temporal aspect to the standing

requirement embodied by the term "party to the *proceeding*."  *See* 28 U.S.C. § 2631(c)

(emphasis added); *cf.* 19 C.F.R. § 351.102(36) (requiring participation "in a segment of

the proceeding"); 19 C.F.R. § 351.102(47) (defining "segment" as "a portion of the

proceeding that is reviewable under section 516A of the Act[, 19 U.S.C. § 1516a]").

Plaintiffs contend that the ministerial error period is "part of the administrative

proceeding." Pls.' Opp'n at 15. [18]  Although the Government does not concede the

point, *see* Def.'s Reply at 2 n.1; Def.'s Exh. Br. at 5 n.1, the Government failed to

---

comments to parties to the proceeding, *see* 19 C.F.R. § 351.224(c)(1)-(2); Oral Arg. Tr.
at 11:17-22, the court notes that Congress contemplated a more permissive approach,
*see* 19 U.S.C. § 1675(h) (directing Commerce to "establish procedures for the
correction of ministerial errors" that will "ensure opportunity for *interested parties* to
present their views regarding any such errors") (emphasis added).  Without the benefit
of briefing on whether Commerce's interpretation of its obligation to administer the
ministerial error process is entitled to *Chevron* deference, and in light of the
Government's waiver of any argument that the court should rely on 19 C.F.R.
§ 351.224(c)(1)-(2) to deny standing, the court does not further address these issues.
*See Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[A]
party waives arguments based on what appears [or does not appear] in its brief.").
[18] Plaintiffs cite several cases for the proposition that a ministerial error allegation
generally confers party to the proceeding status. Pls.' Opp'n at 18-19.  In none,
however, did the court address standing solely on the basis of a ministerial error filing.
*See Neenah Foundry Co. v. United States*, 25 CIT 287, 287-88,  293-95, 142 F. Supp.
2d 1008, 1011, 1016-17  (2001) (affirming Commerce's consideration of ministerial error
reply comments filed by an interested party that had waived participation in a sunset
review but which was not a litigant in the ensuing case); *Zhejiang Native Produce and
Animal By-Prods. Imp. & Exp. Group Corp. v. United States*, 29 CIT 1300, 1302, 400 F.
Supp. 2d 1374, 1376 (2005) (addressing ministerial error comments filed by a
respondent in the underlying proceeding whose subject matter jurisdiction was not
challenged on standing grounds); *Timken Co. v. United States*, Slip Op. 14–51, 2014
WL 1760033, at *1-2 (CIT May 2, 2014) (same).  The cited cases do, however, support
the conclusion that the reviewability of ministerial error determinations renders the
ministerial error period within the confines of the underlying administrative proceeding.

substantively argue that the ministerial error period is not part of the administrative

proceeding (i.e., the relevant segment of the *Certain Steel Nails from Taiwan*

proceeding), *see generally* Def.'s Mot.  The Government has, thus, waived that

argument.  *See Novosteel SA*, 284 F.3d at 1274; *Home Prods. Int'l, Inc. v. United*

*States,* 36 CIT ___, ___, 837 F. Supp. 2d 1294, 1301 (2012) (quoting *United States v.*

*Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.")).[19]

The court notes, however, that the Federal Circuit has described as "untenable" the

argument that "the antidumping statute limits the administrative record to filings that

---

[19] At oral argument, the court invited Parties to comment on any timeliness aspect inherent in the court's interpretation of judicial standing as requiring interested parties to place Commerce on notice of their concerns.  *See* Court's Letter at 1-2.  The Government pointed to *Encon Indus. Inc. v. United States*, 18 CIT 867 (1994), and argued that, as in that case, Commerce lacked notice of Plaintiffs' concerns because they had not presented any facts or argument during the administrative proceeding.  Oral Arg. Tr. at 49:1-11.  *Encon*, however, is distinguishable.  Although *Encon* discusses standing requirements, the court resolved the case on exhaustion grounds.  18 CIT at 868-69.  Additionally, *Encon* is factually distinguishable because the *Encon* plaintiffs never submitted facts or legal argument before or after Commerce issued its final determination.  *Id.* at 868.  Finally, despite those differences, *Encon* does not support a strict interpretation of the notice requirement.  The requirement for parties to have notified Commerce of their concerns was first formulated by the *Encon* court as its interpretation of the minimum participation necessary for judicial standing.  *See Specialty Merch.*, 31 CIT at 365, 477 F. Supp. 2d at 1361(citing *Encon*, 18 CIT at 868); *Laclede Steel Co. v. United States*, 92 F.3d 1206 (Table), 1996 WL 384010, at *2 (Fed. Cir. 1996) (citing same).  The *Encon* court's statement is derived from the *American Grape Growers* court's statement that interested parties must take steps to further their interests at the administrative level.  *See Encon*, 18 CIT at 868 (citing *Am. Grape Growers*, 9 CIT at 105–06, 604 F. Supp. at 1249).  As discussed *supra*, Plaintiffs did so by filing their ministerial error allegation.  Further examination of the timeliness of the matters raised is properly addressed pursuant to the doctrine of administrative exhaustion, discussed *infra* Discussion Section II.

occur before the final determination," and opined that ministerial error comments on a final determination are submitted "during the course of the administrative proceeding." *Alloy Piping*, 334 F.3d at 1291-92.[20]  Accordingly, the court finds that Plaintiffs' timely filed ministerial error allegation fulfills the "party to the proceeding" requirement for standing to invoke the court's (c) jurisdiction.[21]  Because (c) jurisdiction is available to Plaintiffs, (i) jurisdiction, which was alleged in the alternative, is unavailable, and the court does not further address it.[22]

---

[20] This accords with the view that a "final determination" is not yet "final" until "the time for [seeking] judicial review has expired," and the Preamble to Commerce's ministerial error regulation contemplates that ministerial corrections will be made before a determination becomes final.  *Am. Signature, Inc. v. United States*, 598 F.3d 816, 826 (Fed. Cir. 2010) (citing *Antidumping Duties; Countervailing Duties*, 61 Fed. Reg. at 7320).

[21] The Government suggested at oral argument that finding standing in the circumstances present here would permit interested parties to "swoop in" at the last minute, raise substantive concerns about a final determination, and thereby obtain judicial standing to challenge that determination.  Oral Arg. Tr. at 50:7-13.  However, as this case demonstrates, the doctrine of administrative exhaustion generally bars plaintiffs from litigating issues that were not included in administrative case and rebuttal briefs.  *See Dorbest Ltd v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010); 19 C.F.R. § 351.309(c)–(d).  Accordingly, the court does not believe that its resolution of the pending motion will affect any significant change on the need for interested parties to raise substantive concerns in a timely manner.

[22] "Section 1581(i) embodies a 'residual' grant of jurisdiction, and may not be invoked when jurisdiction under another subsection of § 1581 *is* or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate."  *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (emphasis added).

## II.   Administrative Exhaustion

### A. Legal Standard

"[T]he Court of International Trade shall, where appropriate, require

the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).[23]  The statute

"indicates a congressional intent that, absent a strong contrary reason, the court should

insist that parties exhaust their remedies before the pertinent administrative

agencies."  *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir.

2017) (citation omitted).  Administrative exhaustion generally requires a party to present

all arguments in administrative case and rebuttal briefs before raising those issues

before this court.  *See Dorbest*, , 604 F.3d at 1375; 19 C.F.R. § 351.309(c)–(d).  This

permits the agency to address the issue in the first instance, prior to judicial

review.  *See Boomerang Tube*, 856 F.3d at 912–13.

There are exceptions to the exhaustion requirement.  Previously enumerated

exceptions include futility, an intervening court decision, pure questions of law, or when

---

[23] The court may, *sua sponte*, dismiss claims within a complaint pursuant to USCIT Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  *See, e.g.*, *Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006) ("The trial court may dismiss *sua sponte* under Rule 12(b)(6), provided that the pleadings sufficiently evince a basis for that action."); *Constant v. United States*, 929 F.2d 654, 657 (Fed. Cir. 1991); *cf. Cepero-Rivera v. Fagundo*, 414 F.3d 124, 130 (1st Cir. 2005) (noting the "general rule" that *sua sponte* dismissal may be appropriate when parties have notice and an opportunity to amend the complaint or otherwise respond).  A claim that has not been exhausted may be subject to Rule 12(b)(6) dismissal.  *Cf. Valley Fresh Seafood, Inc. v. United States*, 31 CIT 1989, 1994-96 (2007) (considering, but ultimately denying, a motion to dismiss for failure to state a claim based on the plaintiff's failure to exhaust administrative remedies).  Here, Plaintiffs' complaint clearly indicates that they did not submit case or rebuttal briefs, thereby "evinc[ing] a basis" for the court's inquiry into administrative exhaustion.  *Anaheim Gardens*, 444 F.3d at 1315.

plaintiff had no reason to believe the agency would not follow established

precedent.  *See Luoyang Bearing Factory v. United States*, 26 CIT 1156, 1186 n.26,

240 F. Supp. 2d 1268, 1297 n.26 (2002) (collecting cases).  A party may also be

excused from exhausting its administrative remedies when it lacked the opportunity to

bring the arguments to the agency.  *See Essar Steel, Ltd. v. United States*, 753 F.3d

1368, 1374 (Fed. Cir. 2014).

### B.  Plaintiffs Failed to Exhaust Their Administrative Remedies

As discussed above, Plaintiffs first addressed the all-others rate to the agency in

their ministerial error allegation; they did not file case or rebuttal briefs.  The question,

then, is whether an exception to the exhaustion doctrine applies that would permit

Plaintiffs to pursue the claims alleged in counts one and three of their amended

complaint regarding Commerce's calculation of the all-others rate in the *Final Results*.[24]

Plaintiffs contend that exhaustion should not be required because Commerce

first made the contested all-others rate determination in the *Final Results*; the propriety

of Commerce's determination raises a pure question of law; and Commerce's

---

[24] Count two contains Plaintiffs' request for a recalculated rate in the event PT
Enterprise or Unicatch succeed in obtaining a calculated rate in their companion
actions.  Am. Compl. ¶¶ 29-31.  Counts four and five challenge Commerce's denial of
Plaintiffs' ministerial error allegation and its striking of the ministerial error allegation
from the administrative record.  *Id.* ¶¶ 34-40.  Those claims relate to matters that post-
date the *Final Results*, and, thus, are not subject to the exhaustion doctrine.  It bears
mentioning that resolving the standing issue did not require the court to address the
merits of Commerce's denial of Plaintiffs' ministerial error allegation (count four)—i.e,
the basis for the agency's determination that Plaintiffs raised substantive arguments and
not inadvertent errors— or decide whether Commerce's removal of the ministerial error
allegation from the record constituted an abuse of discretion (count five).

determination departs from agency practice.  Pls.' Exh. Br. at 14-18; *see also* Pl.-Int.'s

Exh. Br. at 1-2.  Defendant and Defendant-Intervenor contend that the pure question of

law exception does not apply, and exhaustion should be required.  Def.-Int.'s Exh. Br. at

7; Oral Arg. Tr. at 77:15-21.  As discussed below, Plaintiffs had the opportunity to raise

their objections administratively, the pure question of law exception does not apply, and

Commerce's all-others rate determination was consistent with the agency's recent

practice.

Plaintiffs first assert that they lacked the opportunity to raise objections to

Commerce's determination regarding the all-others rate in the absence of a calculated

rate for a mandatory respondent because Commerce did not address that issue until the

*Final Results*.  Pls.' Exh. Br. at 14-15; *see also id.* at 12-13, 19-20 (discussing relevant

cases).  Plaintiffs further assert that although they had notice that Commerce might

assign rates based on adverse facts available to all three mandatory respondents, "Mid

Continent never argued that [Plaintiffs] . . . should be subjected to AFA."  *Id.* at 14.

Plaintiffs' argument overlooks the fact that Commerce's decision to assign a rate based

on adverse facts available to all mandatory respondents *required* the agency to

reassess the all-others rate because the basis for that rate, Unicatch's preliminary

calculated rate, was no longer available.  At a minimum, Plaintiffs had the opportunity to

file a rebuttal brief presenting arguments to the agency as to how it should determine

the all-others rate pursuant to 19 U.S.C. § 1673d(c)(5)(B) in the event such a

determination became necessary.  Such an argument would clearly be considered a

"response" to the argument raised in Mid Continent's case brief.  *See* 19 C.F.R.

§ 351.309(d)(2).[25]

Plaintiffs further assert that Commerce failed to notify interested parties or the

public that it would (1) no longer use prior calculated rates to determine the all-others

---

[25] Plaintiffs cite several cases supporting their argument that they lacked the opportunity to raise objections.  Pls.' Exh. Br. at 12-13, 19-20.  Those cases are distinguishable, however, because each involves a situation in which Commerce's determination could not have been anticipated when parties filed their case and rebuttal briefs.  *See CS Wind*, 971 F. Supp. 2d at 1285-86 & n.7 (Commerce's method of allocating certain expenses in a financial statement in its final determination differed from the preliminary determination and the method proposed by the statement's proponent); *Fine Furniture (Shanghai) Ltd. v. United States,* 36 CIT ___, ___, 865 F. Supp. 2d 1254, 1263 (2012) (Commerce's final determination included an electricity tariff in its calculation of the benefit provided by a countervailable subsidy that was not included in the calculation made for purposes of the preliminary determination and without notice to the parties); *Lifestyle Enter. Inc. v. United States*, 35 CIT ___, ___, 768 F. Supp. 2d 1286, 1300-01 & n.17 (2011) (Commerce changed its surrogate value source between the preliminary and final results in response to data appended to one party's rebuttal brief); *China Steel Corp. v. United States*, 28 CIT 38, 58-60, 306 F. Supp. 2d 1291, 1309-11 (2004) (Commerce's method of corroborating secondary information used as adverse facts available first announced in the final determination); *cf. Calgon Carbon Corp. v. United States*, Slip. Op. 11-21, 2011 WL 637605, at *11 & n.26 (CIT Feb. 17, 2011) (Commerce's decision regarding its use of combination rates did not arise until after it issued the final results).  Plaintiffs also rely on purportedly favorable language from the court's decision in *Globe Metallurgical, Inc. v. United States*, 29 CIT 867 (2005).  Pls. Exh. Br. at 14; *see also id.* at 12 (attributing the language quoted on page 14 to *Globe Metallurgical*).  In that case, Commerce relied on the dumping margin assigned to one producer (Bratsk) to calculate an antidumping margin partially based on adverse facts available for another producer (Kremny).  *Globe Metallurgical*, 29 CIT at 870-71.  On remand, Commerce increased Bratsk's rate in response to errors identified in the draft remand results, but continued to assign Kremny the lower rate.  *Id.* at 872.  The court declined to require exhaustion of the argument that Commerce should have assigned Kremny the higher corrected rate because the opportunity to contest Commerce's continued use of Bratsk's lower rate did not arise until the final remand results were published.  *Id.* at 873.  Unlike the *Globe Metallurgical* plaintiff, who had no reason to suspect that any change to Bratsk's rate would not carry over into Kremny's rate, here, Plaintiffs had notice that Commerce's use of adverse facts available to calculate Unicatch's rate would require Commerce to recalculate their all-others rate.

rate when all mandatory respondents received rates based on adverse facts available in light of the Federal Circuit's *Albemarle* decision, or (2) assign Plaintiffs a rate based on adverse inferences.  Pls.' Exh. Br. at 14-15.  Plaintiffs' assertions lack merit.  The Federal Circuit has stated that Commerce *need not* "expressly notify interested parties any time it intends to change its methodology between its preliminary and final determinations" when there is "relevant data in the record and the advancement of arguments related to that data before Commerce."  *Boomerang*, 856 F.3d at 913.  By placing Unicatch's preliminary calculated rate at issue in its case brief, Mid Continent effectively placed Plaintiffs' rate at issue as well.  All arguments relevant to Plaintiffs' rate, therefore, should have been raised in an administrative rebuttal brief.

Additionally, Commerce had placed the "public" on notice about its post-*Albemarle* interpretation of what constitutes a "reasonable method" pursuant to 19 U.S.C. § 1673d(c)(5)(B) to determine the rate for non-examined companies when all mandatory respondents in market economy proceedings (or all mandatory respondents eligible for separate rates in nonmarket economy proceedings) receive rates based on adverse facts available: Commerce issued four preliminary determinations before rebuttal briefs were due in the underlying proceeding[26] applying the same reasoning and methodology it applied in this case.[27]  Plaintiffs' failure to argue the issue appears

---

[26] Mid Continent filed its rebuttal brief on September 27, 2017; thus, the court uses that date as a guide.  *See* Def.-Int.'s Resp. at 4.

[27] They include: Prelim. Decision Mem. for Certain Small Diameter Carbon and Allow Seamless Standard, Line, and Pressure Pipe (Under 4 ½ Inches) from Japan at 7-8 & nn.20-21, A- 588-851 (July 5, 2016), *available at* https://enforcement.trade.gov/frn/summary/japan/2016-16473-1.pdf (last visited Sept. 18, 2018); Prelim. Decision Mem.

to stem from their belief that Commerce would follow its pre-*Albemarle* practice and

assign them the investigation rate in the event none of the individually-examined

respondents received calculated rates.  *See* Pls.' Exh. Br. at 3.  Plaintiffs' mistake,

however, does not excuse them from failing to exhaust their administrative remedies.

Next, Plaintiffs assert that the "pure question of law" exception applies.  Pls.' Exh.

Br. at 15-16.  The "pure question of law" exception "*might* apply for a clear statutory

mandate that does not implicate Commerce's interpretation of the statute under the

second step of [*Chevron*, 467 U.S. at 842-45]."  *Fuwei Films (Shandong) Co. v. United*

*States*, 35 CIT ___, ___, 791 F. Supp. 2d 1381, 1384 (2011) (citing *Agro Dutch Indus.*

*Ltd. v. United States,* 508 F.3d 1024, 1032 (Fed. Cir. 2007) (applying the exception to

a *Chevron* prong one issue that did not require further factual development)).[28]  The

_____

for Certain Large Diameter Carbon and Alloy Seamless Standard, Line, and Pressure
Pipe (Over 4 ½ Inches) from Japan at 8 & nn.21-22, A-588-850 (July 5, 2016), *available
at* https://enforcement.trade.gov/frn/summary/japan/2016-16474-1.pdf (last visited Sept.
18, 2018); Prelim. Decision Mem. for Polyethylene Retail Carrier Bags from Thailand at
8 & n.37, A-549-821 (June 2, 2017), *available at* https://enforcement.trade.gov/frn/
summary/thailand/2017-11914-1.pdf (last visited Sept. 18, 2018); Prelim. Decision
Mem. for Certain Frozen Fish Fillets from the Socialist Republic of Vietnam at 9-10 &
n.52, A-552-801 (Aug. 31, 2017), *available at* https://enforcement.trade.gov/frn/
summary/vietnam/2017-19288-1.pdf (last visited Sept. 18, 2018).  Commerce issued an
additional preliminary determination applying this reasoning and methodology before it
published the *Final Results.  See* Prelim. Decision Mem. for Diamond Sawblades and
Parts Thereof from the People's Republic of China at 8 & nn.35-38, A-570-900 (Nov. 30,
2017), available at https://enforcement.trade.gov/frn/summary/2017-26297-1.pdf
(last visited Sept. 18, 2018).  Plaintiffs' assertion that preliminary determinations that are
incorporated by reference into the final results do not serve to notify the public of a
change in practice is misguided.  The afore-mentioned decision memoranda are
available on Commerce's public website and on the most common legal search
engines.
[28] The court's review of Commerce's statutory interpretation is guided by the two-prong
*Chevron* framework.  *See Apex Frozen Foods Private Ltd. v. United States*, 862 F.3d

exception is less likely to apply to a *Chevron* prong two issue requiring the agency's

interpretation of a statute it administers.  *See id.* at 1384-85 (denying motion to amend a

complaint to raise a *Chevron* prong two issue that had not been exhausted before the

agency); *Consol. Bearings Co. v. United States*, 25 CIT 546, 553-54, 166 F. Supp. 2d

580, 587 (2001) (collecting cases and noting that, to apply the pure question of law

exception, courts generally require no further "agency involvement" to resolve the

inquiry or "undue delay" or expense of "scarce party time and resources").[29]

     Here, Plaintiffs challenge Commerce's interpretation of what constitutes a

"reasonable method" pursuant to 19 U.S.C. § 1673d(c)(5)(B) as informed by the

agency's understanding of relevant language in the SAA and the Federal Circuit's

*Albemarle* opinion.  *See* I&D Mem. at 5 & nn.13-14.  It is, therefore, a question of law,

but one that raises a *Chevron* prong two issue.[30]  Obtaining the agency's response to

---

1337, 1344 (Fed. Cir. 2017).  First, the court must determine "whether Congress has
directly spoken to the precise question at issue."  *Id.* (quoting *Chevron*, 467 U.S. at
842).  If Congress's intent is clear, "that is the end of the matter," and the court "must
give effect to the unambiguously expressed intent of Congress."  *Id.* (quoting *Chevron*,
467 U.S. at 842–43).  However, "if the statute is silent or ambiguous," the court must
determine whether the agency's action "is based on a permissible construction of the
statute."  *Id.* (quoting *Chevron*, 467 U.S. at 843).

[29] Following several remands and opinions, the Federal Circuit reversed the
*Consolidated* court's decision to apply the pure question of law exception on the basis
that resolving the plaintiff's challenges required further factual development and "an
assessment of Commerce's justifications for any departure from [its] past practice."
*Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003 (Fed. Cir. 2003) ("Statutory
construction alone is not sufficient to resolve this case.").

[30] Plaintiffs assert that the decisions underlying Commerce's all-others rate
determination "reflect the [agency's] '*Chevron* I' construction as to the meaning of 19
U.S.C. § 1673d[(c)](5), as that statute has been construed by the Federal Circuit in
multiple prior decisions."  Pls.' Exh. Br. at 16.  The court is unclear whether Plaintiffs
seek to suggest that the all-others rate determination raises a *Chevron* prong one issue.

Plaintiffs' arguments would require further agency involvement, i.e., a remand, "an

inefficiency occasioned solely by [Plaintiffs'] inaction."  *See Fuwei Films*, 791 F. Supp.

2d at 1385; *Consol. Bearings*, 25 CIT at 553-54, 166 F. Supp. 2d at 587.  Applying the

exception would "undermine the very purposes the exhaustion requirement is designed

to promote," *Fuwei Films*, 791 F. Supp. 2d at 1385, *to wit*, "protecting administrative

agency authority and promoting judicial efficiency," *Vinh Hoan Corp. v. United States*,

40 CIT ___, ___, 179 F. Supp. 3d 1208, 1226 (2016), consume party resources, and

ultimately delay resolution of this case, *see Consol. Bearings*, 25 CIT at 553-54, 166 F.

Supp. 2d at 587.  Accordingly, the court declines to apply this exception.

Finally, Plaintiffs assert that exhaustion should not be required because

Commerce's method of calculating the all-others rate departed from its prior practice.

Pls.' Exh. Br. at 16-17.  This exception, however, contemplates Commerce's failure to

follow "clearly applicable" judicial precedent, *Philipp Bros., Inc. v. United States*, 10 CIT

76, 79-80, 630 F. Supp. 1317, 1320-21 (1986), not agency practice, which is subject to

change, *see Encon*, 18 CIT at 868 (observing that Commerce may change longstanding

practices at any time "for good reason").  Further, as set forth above, Commerce's

determination in this case was consistent with its post-*Albemarle* practice, of which

Plaintiffs should have been aware.[31]  *See supra* note 27 and accompanying text.

---

Congress has, however, left the discernment of the "reasonable method" to be applied
to Commerce's discretion, *see* 19 U.S.C. § 1673d(c)(5)(B); thus, the statute lacks the
"clear direction" necessary to end the analysis at *Chevron* prong one, *see FAG Italia
S.p.A. v. United States*, 291 F.3d 806, 815 (Fed. Cir. 2002).
[31] To the extent Plaintiffs seek to suggest that Commerce's determination ran counter to
applicable judicial precedent barring the use of adverse facts available to calculate non-

In sum, Plaintiffs failed to exhaust their administrative remedies.  Accordingly,

counts one and three of Plaintiffs' amended complaint are dismissed pursuant to USCIT

Rule 12(b)(6).[32]

## III.   STO Industries' Motion to Intervene

STO Industries moves to intervene in this action as a matter of right.  Mot. to

Intervene at 1.  Defendant and Defendant-Intervenor each oppose STO Industries'

motion to intervene on the basis that STO Industries lacks standing for the same

reasons they asserted that Plaintiffs lacked standing.  *See* Def.'s Opp'n Mot. to

Intervene; Def.-Int.'s Opp'n Mot. to Intervene.  Because the court has resolved the

---

examined respondents' rates, *see* Pls.' Exh. Br. at 17-18, Plaintiffs fail to identify that
precedent, *see id.*  Plaintiffs do, however, point to portions of their opposition to
Defendant's motion to dismiss.  *See id.* at 16-17 (citing Pls.' Opp'n at 24-35).  Therein,
Plaintiffs cite, *inter alia*, *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716
F.3d 1370 (Fed. Cir. 2013), and *Changzhou Wujin Fine Chemical Factory Co., Ltd. v.
United States*, 701 F.3d 1367 (Fed. Cir. 2012).  Pls.' Opp'n at 26-27.  *Bestpak* and
*Changzhou* are not directly on point.  *Bestpak* held that, as a matter of law, Commerce
could use the simple average of an AFA rate and a de minimis rate to calculate the
separate rate for non-examined respondents in a nonmarket economy proceeding.  716
F.3d at 1378.  The court further held, however, that, as applied, Commerce's
determination was unreasonable and potentially punitive.  *Id.* at 1378-80.  *Changzhou*
held that Commerce acted arbitrarily when it used the simple average of a *hypothetical*
AFA rate and a de minimis rate to calculate a separate rate.  701 F.3d at 1375-79.
[32] Plaintiffs also appeal to judicial equity in an effort to persuade the court to decline to
require exhaustion.  According to Plaintiffs, requiring exhaustion "would inflict
irreparable injury on [them] and their customers," and would "effectively sanction[]"
Commerce's determination.  Pls.' Exh. Br. at 20.  The court declines this invitation to
effectively create a new exception to the exhaustion doctrine.  Barring an unexhausted
argument may often result in a financial loss to the argument's proponent (or their
customers), in the sense that success on the merits of the argument may have resulted
in a financial win.  Additionally, dismissal on exhaustion grounds does not represent the
court's sanctioning or approval of Commerce's determination because the court is
expressly declining to reach the merits of the issue.

standing issue in favor of Plaintiffs, so too the court resolves the motion to intervene in favor of STO Industries.  Accordingly, the court grants STO Industries' motion to intervene in this (reduced) action.[33]

### CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction (ECF No. 26) is **DENIED**; counts one and three of Plaintiffs' amended complaint are **DISMISSED**; and STO Industries' motion to intervene (ECF No. 25) is **GRANTED**.

/s/      Mark A. Barnett
Mark A. Barnett, Judge

Dated: September 24, 2018
        New York, New York

---

[33] STO Industries indicated its intent to litigate counts one to five of Plaintiffs' amended complaint.  Mot. to Intervene at 5.  The court has reduced the number of claims at issue, however, for failure to exhaust administrative remedies.  *See supra* Discussion Section II.